UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JANE DOE AW,<br>         *Plaintiff* | §<br>§<br>§ | |
| v. | §<br>§ | Case No. 1:20-cv-00126-SH |
| BURLESON COUNTY,<br>         *Defendant* | §<br>§ | |

## ORDER OF MISTRIAL

On February 14, 2022, the Court called the above-captioned case at 8:37 a.m. and both parties announced ready for trial. Counsel for Plaintiff Jane Doe AW were present in the courtroom, but Plaintiff was not; Plaintiff's counsel told the Court that Plaintiff "is not in the courthouse right now." The Court then conducted voir dire. A jury comprising eight legally and duly qualified jurors was empaneled, and the court recessed for lunch.

When court reconvened after the lunch recess, Plaintiff entered the courtroom and was seated at counsel's table. The jury then was seated in the jury box. Juror No. 3 immediately asked to approach the bench, where she told the Court that she had "a personal conversation" with Plaintiff that morning just before jury selection, unaware that Plaintiff was a party in this case. The remaining jury members retired to the jury deliberation room, and the parties were given the opportunity to examine Juror No. 3 regarding her interaction with Plaintiff.

Juror No. 3 said that she had spoken with Plaintiff in the women's restroom just outside of the undersigned Magistrate Judge's courtroom on the sixth floor of the United States Courthouse at approximately 9 a.m., when the venire was brought to the sixth floor from the jury assembly room on the first floor to begin voir dire. Juror No. 3 said Plaintiff told her that she and her husband had been in a car accident that morning, and Juror No. 3 "comforted" Plaintiff. "There was a moment

1

too when she asked if I was on the jury," Juror No. 3 said. "I said yes, and she said I'm nonjury, so . . . I thought she worked here." On questioning, Juror No. 3 agreed that she had an "in-depth" conversation with Plaintiff, and also said: "I do feel bad for her."

Juror No. 3 said that at least one other individual was in the restroom during part of her conversation with Plaintiff, but she did not know whether that person was a member of the venire. Juror No. 3 also said that another member of the venire, who became Juror No. 7, saw Juror No. 3 and Plaintiff walk out of the restroom together. Juror No. 3 said Juror No. 7 told her she had seen Plaintiff and commented on a badge visible on Plaintiff's coat, as follows: "Oh, I saw her too. She had a badge. I thought she worked here," to which Juror No. 3 said she replied: "I saw her badge too and I also thought she worked here."

After Juror No. 3 was questioned, Defendant moved to strike Juror No. 3 for cause and also moved for mistrial. Plaintiff joined Defendant's motion to strike Juror No. 3 for cause. The Court granted the agreed motion to strike, and Juror No. 3 was excused.

The Court then brought the remaining seven members of the jury back into the Courtroom and asked the jurors whether they knew Plaintiff, had interacted with her at the courthouse that day, or had overheard a conversation with her in the restroom. No juror responded in the affirmative. The Court and the parties then examined Juror No. 7 outside the presence of the remaining jurors. Juror No. 7 said that she had encountered Plaintiff outside the courtroom "in passing." Juror No. 7 confirmed that she noticed Plaintiff and Juror No. 3 walking out of the sixth-floor women's restroom that morning, and that Plaintiff "had a badge." She also said Juror No. 3 told the entire jury that the previous recess was taken because Juror No. 3 had "seen the Plaintiff before."

After considering Defendant's motion, Plaintiff's communication with Juror No. 3, the entire jury's awareness of the contact, and the relevant law, the Court granted Defendant's motion for a mistrial and discharged the jury. The Court now confirms its rulings in this Order.

"'The decision to declare a mistrial is left to the sound discretion of the judge,' and granting a mistrial 'is appropriate when there is a high degree of necessity.'" *Zamora v. City of Houston*, 798 F.3d 326, 337 (5th Cir. 2015) (quoting *Renico v. Lett*, 559 U.S. 766, 774 (2010)). In any trial, there is initially a presumption of jury impartiality. *United States v. Ruggiero*, 56 F.3d 647, 652 (5th Cir. 1995). "When a colorable showing of extrinsic influence appears, a court must investigate the asserted impropriety." *Id.* (cleaned up).

On the facts of this case, Plaintiff had an "in-depth" conversation with a juror outside of the courtroom that engendered sympathy for Plaintiff, thereby creating inherent harm. In reaching this conclusion, the Court is guided by the opinion of the Fifth Circuit Court of Appeals in *United States v. Harry Barfield Co.*, 359 F.2d 120 (5th Cir. 1966). In *Harry Barfield*, the court found that a party representative's conversations with jurors in a courthouse elevator about family relationships were prejudicial, reasoning that:

> Our system of trial by jury presupposes that the jurors be accorded a virtual vacuum wherein they are exposed only to those matters which the presiding judge deems proper for their consideration. This protection and safeguard must remain inviolate if the trial by jury is to remain a viable aspect of our system of jurisprudence. Any conduct which gives rise to an appearance of evil must be scrupulously avoided.

*Id*. at 124; *see also Rinker v. Napa Cnty.*, 724 F.2d 1352, 1354 (9th Cir. 1983) ("The harm inherent in deliberate contact or communication [between juror and party] can take the form of subtly creating juror empathy with the party and reflecting poorly on the jury system.") (citing *Harry Barfield*); *Leger v. Westinghouse Elec. Corp.*, 483 F.2d 428, 430 (5th Cir. 1973) (setting aside jury

3

verdict where juror and defense representative engaged in "deliberate conversations, not inadvertent exchanges or greetings" during trial recess).

The Court finds that Plaintiff's communication with a member of the jury "exceeded the bounds of propriety" in a manner likely to influence jury deliberations, and thus, "prejudice or harm appears as a matter of law." *Harry Barfield*, 359 F.2d at 124. Accordingly, the Court in its discretion **ORDERS** that the above-captioned case is mistried.

Pursuant to the Second Amended Scheduling Order issued February 14, 2022 (Dkt. 134), the final pretrial conference is reset until 10 a.m. March 23, 2022, with jury trial at 9 a.m. on March 28, 2022.

**SIGNED** on February 16, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE