# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

**JANE DOE AW,** §
    *Plaintiff* §
 §
**v.** §       **Case No. 1:20-CV-00126-SH**
 §
**BURLESON COUNTY,** §
    *Defendant* §

## O R D E R

Trial of this civil rights case is set for March 28, 2022. Dkt. 134. The parties jointly moved the Court for a pretrial legal ruling in a telephone conference on March 22, 2022, and submitted a combined trial brief in support of their joint motion on March 23, 2022. Dkt. 148 (corrected). The Court heard arguments on the joint motion during the Final Pretrial Conference later the same day. Having considered the parties' brief, their oral arguments, the record as a whole, and the applicable law, the Court issues the following Order.

## I.  Background

Plaintiff Jane Doe AW alleges that former Burleson County Judge Mike Sutherland used his power and authority as a judge to sexually assault her on multiple occasions when she worked as a criminal clerk in the Burleson County Attorney's Office. Plaintiff's Declaration, Dkt. 49-1. Doe alleges that Sutherland sexually assaulted her twice in his Burleson County office after calling her to his office, to notarize a document in the first instance and to bring him papers in the second. Dkt. 12 ¶¶ 48-57; Dkt. 49-1 at 3. Doe alleges that she was terminated from her job soon after she complained to Sutherland about his abuse. Dkt. 49-1 at 6. Sutherland later resigned as county judge in lieu of disciplinary action pursuant to a voluntary agreement before the State Commission on Judicial Conduct. Dkt. 45 ¶ 56; Dkt. 86-2.

In her First Amended Complaint, Doe alleged (1) claims under 42 U.S.C. § 1983 against Burleson County and Sutherland in his individual capacity; (2) sexual assault against Sutherland; (3) vicarious liability against Funky Junky, a restaurant owned by Sutherland; and (4) intentional infliction of emotional distress against Sutherland and Funky Junky. Dkt. 12. Defendants moved to dismiss. Dkts. 17, 19. The District Court denied the motions as to Defendants Sutherland and Burleson County, but dismissed with prejudice all of Doe's claims against Funky Junky for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 42.

On November 6, 2020, Defendant Burleson County moved for summary judgment on Doe's Section 1983 claim, asserting that she had no evidence of any policy or custom established by the County that violated her constitutional rights. Dkt. 47. After Burleson County filed its motion, on December 10, 2020, Doe entered into a confidential settlement agreement with Sutherland and Funky Junky, Dkt. 85 (sealed), and the District Court dismissed with prejudice the claims against Sutherland and Funky Junky. Dkt. 53.

On February 12, 2021, the undersigned issued a Report and Recommendation to deny summary judgment as to Doe's surviving claim against Burleson County. Dkt. 55. The Court found that Sutherland was a policymaker for Burleson County and that there was a factual dispute as to whether his actions created an official custom or policy sanctioned by the County by sexually harassing female employees, which precluded a grant of summary judgment. *Id.* at 7-8; *see also* Dkt. 97 at 4. The District Court adopted the Report and Recommendation and denied summary judgment on March 3, 2021. Dkt. 57. On March 26, 2021, the parties consented to trial before a United States Magistrate Judge. Dkt. 79. This case then was reassigned to the undersigned for all proceedings. Dkt. 81. Defendant moved for reconsideration as to summary judgment, which the Court denied. Dkt. 97.

The parties now jointly move the Court to decide as a matter of law whether Sutherland, as Burleson County Judge, possessed final policymaking authority for the acts in question.[1]

## II. Plaintiff's Claim

Doe's sole claim remaining for trial is stated in her operative pleading as follows:

<u>42 U.S.C. § 1983 Monell Claims against Burleson County</u>

101.   Burleson County is jointly and severally liable to Doe AW due to the actions of the county policymaker, Sutherland. Sutherland was the county judge for Burleson County and acted under the color of law when he sexually assaulted Doe in November 2017, December 2017, and January 2018.

102.   Sutherland is the policymaker for the county.

103.   He had a practice of sexual misconduct, harassment, and assault.

104.   As policymaker, his practice of assaulting, harassing, and intimidating individuals was the moving force behind the constitutional violation resulting in Jane Doe AW's harm.

105.   Sutherland had a history of intimidation, and harassment, as documented in public complaints.

First Amended Complaint, Dkt. 12.

## III. Legal Standards

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

Local governing bodies, including municipalities, qualify as "persons" under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). While municipalities can be sued directly under

---

[1] Defendant did not directly raise the question whether Sutherland was the final policymaker for any relevant area in its motion for summary judgment or request for reconsideration.

§ 1983, *Monell* establishes that they cannot be found liable on a theory of vicarious liability or respondeat superior. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019). "In other words, 'the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Municipal liability under § 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski,* 237 F.3d at 578 (citing *Monell,* 436 U.S. at 694).

Generally, there are three ways to establish a municipal policy for the purposes of *Monell* liability. *Webb*, 925 F.3d at 214. First, a plaintiff can show "written policy statements, ordinances, or regulations." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc).

Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* (citation omitted). A policy or custom is official when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *see also Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 413 (5th Cir. 2015) ("Regardless of its form, the policymaker must have actual or constructive knowledge of the official policy or custom. Importantly, the policymaker must have final policymaking authority.") (cleaned up).

Third, an unconstitutional policy may be found when a policymaker performs the specific act that forms the basis of the Section 1983 claim. *Davidson v. Ctiy of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-82, 484-85 (1986); *Webb*, 925 F.3d at 215; *Anderson v. City of McComb*, 539 F. App'x 385, 388 n.2 (5th Cir. 2013)

4

("When the policymakers are the violators, no further proof of municipal policy or custom is required."); *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010); *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004). In rare circumstances, even a single unconstitutional action may be sufficient to impose municipal liability if undertaken by the municipal official or entity possessing final policymaking authority for the action in question. *Webb*, 925 F.3d at 215; *Davidson*, 848 F.3d at 395; *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). "When a final policy maker makes the relevant decision, and when that decision is within the sphere of the policy maker's final authority, the existence of a well-established, officially-adopted policy will not insulate the municipality from liability." *Bennett*, 74 F.3d at 586 (internal quotation marks omitted). Whether a particular official has final policymaking authority is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 (1986).

## IV. Analysis

The Court has found that Sutherland was a policymaker for Burleson County, satisfying the first element for municipal liability under *Monell*, and that genuine issues of material fact as to the policy and causation elements remain for trial. Dkt. 55 at 7-9; Dkt. 97 at 4. The parties now address the available avenues of establishing municipal policy.

Doe does not allege that a written policy of Burleson County caused the violation of her constitutional rights. Rather, she states that she "sued Burleson County directly for the actions of its County Judge, a final policymaker under the premise that his single actions violated the Plaintiff's constitutional rights under the Fourteenth Amendment; and, Burleson County had a policy, practice, allowing the harassment of individuals promoted by the final policymaker, Mike Sutherland." Dkt. 148 at 2. Doe thus is proceeding under the second and third methods of establishing municipal policy. Accordingly, she must show that Sutherland's actions created "a custom that fairly represents municipal policy," *Alvarez*, 904 F.3d at 390, or that he performed the

acts that form the basis of her Section 1983 claim, *Davidson*, 848 F.3d at 395. To establish as a matter of law that Burleson County is liable for Sutherland's allegedly unconstitutional acts as final policymaker under either theory, Doe must establish that Sutherland had final policymaking authority over the actions in question. *Jett*, 491 U.S. at 737; *Praprotnik*, 485 U.S. at 123; *Webb*, 925 F.3d at 214; *Davidson*, 848 F.3d at 395.

Doe does not identify Sutherland's sphere of final policymaking authority in her brief. At the hearing, she argued that, as Burleson County Judge, Sutherland was the final policymaker for administration of all Burleson County business (arguing, *inter alia*, that Sutherland "was the final policymaker as it relates to the area of administering the county's business"). Defendant, in turn, seeks a narrower determination that Sutherland "did not possess final policymaking authority for Burleson County, Texas in the area of establishing county-wide policy for sexual harassment/ assault or final policymaking authority over employees of the Burleson County Attorney's Office" pursuant to state law. Dkt. 148 at 11.

The Court has considered all authorities cited by Doe, including *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980), quoted in her brief. Dkt. 148 at 4-5. In *Familias Unidas*, the Fifth Circuit stated:

> There are, to be sure, many actions of a county judge that may justifiably be considered to constitute or represent county "policy" under *Monell*. In addition to his judicial duties, a Texas county judge **is charged by the state constitution and statutes** with the performance of numerous executive, legislative and administrative chores in the day-to-day governance of the county. *See, e. g.*, Tex. Const. art. 5, § 18 (county judge presides over Commissioners' Court, the county's legislative body); Tex. Rev. Civ. Stat. Ann. art. 689a-9 (Vernon 1964) (judge prepares county budget); Tex. Elec. Code Ann. arts. 4.02, 4.05, 8.29, 8.29b (Vernon 1967) (various duties in conducting elections). Because of the unique structure of county government in Texas, the judge like other elected county officials, such as the sheriff and treasurer holds virtually absolute sway **over the particular tasks or areas of responsibility**

**entrusted to him by state statute** and is accountable to no one other than the voters for his conduct therein. Thus, **at least in those areas in which he, alone, is the final authority or ultimate repository of county power,** his official conduct and decisions must necessarily be considered those of one "whose edicts or acts may fairly be said to represent official policy" for which the county may be held responsible under section 1983. *Monell v. Department of Social Services*, 436 U.S. at 694.

*Id.* at 404 (emphasis added) (internal citations omitted). *Familias Unidas* does not hold that county judges are responsible for administration of all county business; rather, it supports a finding that county judges have final policymaking authority over the areas entrusted to them by the state constitution and statutes. *Praprotnik*, 485 U.S. at 124. Doe identifies no such relevant statute.

Article 5 of the Texas Constitution, Section 18(b), is similarly unavailing to Plaintiff. It provides:

> Each county shall . . . be divided into four commissioners precincts in each of which there shall be elected by the qualified voters thereof one County Commissioner, who shall hold his office for four years and until his successor shall be elected and qualified. The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed.

Tex. Const. art. 5, § 18(b). This provision does not establish that Sutherland had final policymaking authority over administration of Burleson County's business; rather, it states that it is the county commissioners, with the county judge as presiding officer, that "shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business" conferred by the Texas Constitution and laws.

Doe further asserts that the Fifth Circuit's decision in *Bennett* "makes it clear that the offending conduct just needs to be tangentially associated with the policies under the policymaker's control." Dkt. 148 at 4. The Court disagrees. In *Bennett*, which concerned a rape by a county sheriff, the

7

court stated that "[i]t has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement." 74 F.3d at 586 (quotation omitted). The Sheriff's actions "were those of the County" because his relationship with the plaintiff grew out of an attempted murder investigation. *Id.* Rather than being "tangentially associated" with his area of responsibility, the court held that the sheriff's act in *Bennett* fell squarely within his law enforcement function, even though "rape is not a legitimate law enforcement goal." *Id.*

Finally, Doe cites the Burleson County employment policy, "if relevant,"[2] and deposition testimony from current Burleson County Judge Keith Schroeder submitted as summary judgment evidence. Dkt. 148 at 3-4. Neither establishes that Sutherland had final policymaking authority for a subject area relevant to her claim.

The county's employment policy on harassment states, in pertinent part:

> If, for any reason, the employee feels that reporting the harassment to the department head or elected/appointed official may not be the best course of action, the report should be made to the County Judge or the County Attorney.

> The supervisor, elected/appointed official, or department head to whom a claim has been reported shall be responsible for seeing that prompt action is taken to investigate the claim, and that notice of the claim is filed with the County Judge. The County Judge or County Attorney may assist in the investigation of any and all alleged violations.

Dkt. 47-1 at 16. While the policy gives both the county judge and county attorney some responsibilities as to harassment claims, the policy does not provide that the county judge has final authority to set the harassment policy for the county. *See Webb*, 925 F.3d at 217 ("A true policymaker must 'decide the goals for a particular city function and devise the means of achieving those goals.'") (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)).

---

[2] Doe argues that the Court may consider other unspecified "policies under Sutherland's control" and "contends that since this is a Constitutional claim the employment policy is a red herring." Dkt. 148 at 3.

In the testimony on which Doe relies, current Burleson County Judge Keith Schroeder testified that the county judge has the obligations stated in the local government code and final policymaking authority over his own office, which consists of himself and one secretary. Dkt. 50. As stated above, Doe worked not for Sutherland but for the County Attorney.

In sum, Plaintiff has failed to support her position that Sutherland was the final policymaker in the area of administering Burleson County's business. She has identified no provision of Texas law delegating to Sutherland as Burleson County judge final policymaking authority over administration of all county business. Nor has she shown that Sutherland had final policymaking authority for Burleson County in the spheres of (1) establishing county-wide policy for sexual harassment or assault, (2) employees of the Burleson County Attorney's Office, or (3) any other area relevant to Doe's claims.

### V.  Conclusion

For the foregoing reasons, based on the evidence and arguments in this case, the Court finds as a matter of law that Mike Sutherland, as Burleson County Judge, did not have final policymaking authority for any area relevant to Plaintiff's claim against Burleson County.

In view of this finding, it appears that no claim asserted by Plaintiff remains to be tried. Accordingly, the March 28, 2022 trial setting is hereby **VACATED** pending further briefing from the parties.

**SIGNED** on March 24, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE